FRIDA EVISON vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

February 13, 1891.

**Railway—Accident at Road-Crossing—Evidence as to Ringing of Bell.**—The testimony of a fireman on a locomotive engine, whose duty it is to ring the bell when the engine is in motion, "that, although he had no independent recollection of ringing it on a certain occasion, yet it was his uniform and invariable habit to ring it, so that it had become second nature with him to do so, and that from these facts he was able to state positively that he did ring it on the occasion referred to," is competent and sufficient evidence to justify the jury in finding that the bell was rung, notwithstanding the testimony of other witnesses that they were

·in·position to have heard it if it had been rung, and that it was not
rung.

**Same—Ordinance Limiting Speed held Unreasonable.**—An ordinance
of the city of St. Paul limiting the speed of railway trains within the
city limits to four miles an hour *held*, under the facts, to be unreason-
able and void as applied to a certain part of defendant's road in the sub-
urbs of the city.

**Same — Reasonableness of Ordinance — Province of Court and of
Jury.**—Whether the reasonableness and validity of an ordinance, where
it depends upon the existence of extrinsic facts as to which the evidence
is conflicting, is a question for the court or for the jury, it is not error
for the court to instruct the jury that it is unreasonable and void, when
the evidence is conclusive.

Appeal by plaintiff from an order of the district court for Ramsey
county, *Otis*, J., presiding, refusing a new trial after verdict for de-
fendant, in an action to recover $10,150 for personal injuries.

*Williams & Schoonmaker*, for appellant.

*James H. Howe* and *S. L. Perrin*, for respondent.

MITCHELL, J.[1]    This was an action to recover damages for personal
injuries caused by the alleged negligence of the defendant.    The plain-
tiff was riding with a friend in a sleigh on Phalen street, in the city
of St. Paul, and as they were passing under the railroad of defendant,
which crosses this street on a bridge 14 feet above the street grade,
the horse was frightened by a passing train, and ran away, causing
the injuries complained of.    There was an ordinance of the city pro-
hibiting the running of any railroad train within the limits of the
city at a greater speed than four miles an hour, or without having
and ringing a bell of sufficient size at all times while the train is in
motion.    Two, and only two, acts of negligence were charged against
the defendant:    (1) Running its train within the city limits at a
greater rate of speed than allowed by the ordinance; and (2) not
ringing a bell as required.    It was conceded that the train was run-
ning at the rate of over 10 miles an hour, but there was no evidence
that this was an improper rate of speed except the fact that it was
greater than permitted by the city ordinance.    When the testimony

---

[1] Vanderburgh, J., took no part in this case.

closed, the court instructed the jury that, "so far as the ordinance attempted to limit the speed of trains to four miles an hour, it was, in its application to defendant's road at the place of the accident, and east therefrom to the city limits, unnecessary, unreasonable, and void;" but he submitted the case to the jury, upon the evidence as to whether the bell was rung as required by the provisions of the ordinance in that regard, which he instructed them were reasonable and valid. The jury found a general verdict for the defendant, and also specially that the bell was rung. If the court was right in holding the ordinance void in so far as it limited the rate of speed, and if the special finding of the jury was justified by the evidence, that was the end of plaintiff's case, and the general verdict for defendant necessarily followed, and the question whether the court was right or wrong in his instructions as to the contributory negligence of the plaintiff or her friend, with whom she was riding, and who drove the horse, is wholly immaterial.

The plaintiff and her friend testified that no bell was rung; that they were looking and listening for approaching trains, and heard no bell; and that they would have heard it if one had been rung. A third party who was also in the vicinity testified that he did not hear any bell. As against this negative testimony, the fireman on the engine, and whose regular duty it was to ring the bell, testified that, while he had no independent recollection of ringing the bell on that particular trip, yet, in accordance with a strict rule of the company, it had been his uniform and invariable habit to ring it, so that it had become second nature with him to do so, and from these facts he was able to state positively that he did ring it on this occasion. The engineer's testimony corroborated the fireman. We think this testimony was not only competent, but also sufficient to justify the special finding of the jury. While a witness can only testify to that which is within his personal knowledge, yet, if from his invariable and long-continued habit to perform a certain act in the line of his work, or from any other facts which aid or refresh his memory, he is able to testify of his own knowledge that he did the act on a particular occasion, the evidence is competent, although he may not have any independent recollection of the fact. If a witness is truthful,

this is usually the only testimony which he can give in such cases, where there was nothing to particularly impress the particular occasion upon his mind; and it is well known that the almost unconscious and automatic action resulting from the constant and long-continued habit of doing a particular act under like circumstances in the line of any particular occupation, furnishes not only strong moral proof that it was done, but also the principal assurance, in many things involving the safety of the public, that it will be done in the future.

2. The only remaining question is as to the correctness of the ruling of the court that the provision of the ordinance regulating the speed of trains was unreasonable and void. The power of the city to adopt reasonable regulations regarding the speed of railroad trains within its limits is unquestioned. This is a proper exercise of the police power granted to it by the state. The object is the personal safety of the public, which is paramount to all considerations of private interest or benefit; and, in determining what regulations are reasonable and necessary to accomplish this object, much must be left to the judgment and discretion of the city council; and when they have exercised their judgment and discretion in passing an ordinance, it is *prima facie* valid, and, to justify a court in setting aside their action, its unreasonableness, and the want of necessity for it as a measure for the protection of life and property, must be clear, manifest, and undoubted, so as to amount, not to a fair exercise, but an abuse of discretion, or a mere arbitrary exercise of the power of the council. *Knobloch* v. *Chicago, Mil. & St. Paul Ry. Co.*, 31 Minn. 402, (18 N. W. Rep. 106.) But, where it clearly and manifestly appears that the ordinance is unnecessary and unreasonable, the courts have the undoubted right to declare it void. The chief and primary object of ordinances regulating the speed of trains in cities is undoubtedly the protection of the public on streets at grade crossings and other places on the line of the railroad where they are accustomed and have the right to go. It is self-evident that a limitation of the rate of speed might be reasonable in the thickly-populated and crowded portions of a city, where continuous buildings obstruct the view of approaching trains, and where the noise and bustle of travel and business are apt to prevent people from hearing the approach of a train, which would

be wholly unnecessary and unreasonable in the large tracts of sparsely-populated territory of a merely rural character, now so often included within the corporate limits of cities.

Without going into details, the undisputed evidence in this case is that the distance between Phalen street and the eastern boundary of the city is nearly two miles; that in the whole of this district there was only one street or highway crossing over defendant's road, viz., at Hazel park, (a mile east of Phalen street,) which was protected by cattle-guards; that the railroad was fenced on both sides the entire distance from Phalen street to and beyond the city limits, so that, with the exception of the crossing at Hazel park, there was not a place where either persons or animals could get upon the track except by breaking down or jumping over the fence. Substantially the same condition of things existed from Phalen street westward to Seventh-Street station, a distance of over half a mile, according to the scale of the map in evidence, the only street crossing at that time between these points being, as we understand the evidence, at Duluth avenue, which is four blocks west of Phalen street. It is also very clear that the country on both sides of the railroad from Phalen street eastward to the city limits was very sparsely settled, being largely in a state of nature, and covered with brush and trees, and what was improved was mainly used for farms or gardens. Phalen street itself was a well-travelled street, being a leading thoroughfare to reach Stillwater avenue to the north, and thence out into the country on the road to Stillwater. But this fact was of little importance so far as the speed of trains was concerned, as the railroad did not cross this street at grade, but on a bridge 14 feet above. Confining ourselves to the country from Phalen street east to the city limits, we have defendant's railroad running for two miles on the company's own right of way, and securely fenced on both sides, through a sparsely-settled and comparatively unimproved country, essentially rural in its character, with but one road or street crossing on the whole distance, and an ordinance limiting the rate of speed to four miles an hour, (about the rate at which an active man would walk,) at which rate it would take a train half an hour to run the two miles. A mere statement of these facts ought to be conclusive that, as applied to this part of defendant's

road, the ordinance is so manifestly unnecessary to the protection of life and property that no two minds could reasonably differ as to the fact. According to the map, which is made part of the record, the limits of the city must be about nine miles in length by seven in breadth, embracing much land that is not even platted, and hence presumably either unimproved or else devoted to purely agricultural purposes; and it is undoubtedly true that much of that which is platted on paper is in the same condition. To apply a uniform iron-clad rule to the whole of this territory, that no train shall run over four miles an hour, is unnecessarily oppressive, and, if obeyed or enforced, would deprive the public of anything like reasonable suburban transportation.

Counsel, however, contend that the question of the reasonableness of the ordinance should have been submitted to the jury on the evidence. Dillon, in his work on Municipal Corporations, lays it down as the law that whether a particular ordinance is unreasonable and therefore void is a question for the court, and not for the jury, and evidence bearing upon the question is properly addressed to the court; but, in determining it, the court will have regard to all the circumstances of the city, the objects sought to be attained, and the necessity which exists for the ordinance. Dill. Mun. Corp. § 327. This rule has been usually followed by the courts. See *City of Lake View* v. *Tate*, 130 Ill. 247, (22 N. E. Rep. 791.) But in *Clason* v. *City of Milwaukee*, 30 Wis. 316, it was held that if the reasonableness of an ordinance depends upon the existence of particular facts of which the court has no judicial knowledge, or upon the existence of particular facts which are disputed, the question must be left to the jury. It seems to us that on principle, as well as for practical reasons, the better rule is that stated by Dillon. An ordinance is in the nature of a local statute, and it would seem anomalous to leave it to a jury to determine whether a law was valid. Certainly, if the invalidity is apparent on the face of a statute or ordinance, it has always been held a question of law for the court, and we cannot perceive why the rule should be different where the invalidity is made to appear from extrinsic facts. Any other rule would lead to the embarrassing result that, upon the same state of facts, one jury might hold an ordinance valid, and an-

other jury hold it invalid. But, under either rule, where the evidence is conclusive, as we think it was in this case, there can be no error in the court so instructing the jury. Our conclusion therefore is that the court was right in charging the jury "that, in its application to defendant's railroad at the place of the accident, and eastward therefrom to the city limits, the ordinance was unnecessary and void."

Order affirmed.