WILLIAM ZUMAULT, Respondent, v. KANSAS CITY AND INDEPENDENCE AIR LINE, Appellant.

Kansas City Court of Appeals, November 1, 1897.

1. **Kansas City Freehold Charter:** ORDINANCE GOVERNING SPEED OF TRAINS. The freeholder's charter of Kansas City authorizes the council to regulate by ordinance the speed of trains within the city limits. But the exercise of such power is subject to judicial review as to the oppressiveness or reasonableness of the ordinance.

2. ———: ———: INDEPENDENCE AIR LINE. The ordinance of Kansas City restricting the speed of trains within the limits of the city to six miles per hour is inapplicable and oppressive to the operation of the Independence Air Line Railroad between Grand Central Depot and the eastern limits of the city.

3. **Ordinance:** REASONABLENESS: QUESTION FOR THE COURT. The reasonableness of an ordinance regulating the speed of trains is a question for the court upon all the facts and not for the jury.

4. **Damages:** INSTRUCTION: EVIDENCE. An instruction directing the jury to compensate the defendant for losses both past and future is misleading where there is no evidence as to the value of the services from which the alleged losses came.

5. **Negligence:** CONTRIBUTORY: PERSONAL INJURY: INSTRUCTION. An instruction as to the contributory negligence of the plaintiff in an action for damages for personal injury is criticised for want of clearness and a proper instruction suggested.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Trimble & Braley, John A. Eaton* and *B. N. Simpson* for appellant.

(1) It was error to include in the instructions 5 and 6 asked by plaintiff and given by the court, as to damages, any language that would permit the jury to allow for loss of time or for medical attendance, hospital bills, etc., when there was no proof thereof. *Mammerburg v. R'y,* 62 Mo. App. 563; *Madden v. R'y,* 50 Mo. App. 666. (2) The ordinance offered by plaintiff attempted to limit the speed of trains by imposing a penalty upon the person actually operating the trains, and did not, directly or inferentially, apply to the company; and the court should have given instruction 16 asked by defendant and have refused the instruction 4 given at request of plaintiff. That the words "other persons" in said ordinance refers to

actual operators of the train, see: *State v. Kruger*, 35 S. W. Rep. 604; *City of St. Louis v. Laughlin*, 49 Mo. 559; *State v. Bryant*, 90 Mo. 534. (3) If the ordinance in question referred to defendant company and not alone to the actual operators of the train, then it could not apply to defendant unless it was reasonable with reference to the territory and all the surroundings where the accident occurred; and defendant had a right to offer, and have considered by the jury, evidence showing said ordinance to be unreasonable at the place and time in question. The court erred in giving plaintiff's instruction 3. *Corrigan v. Gage*, 68 Mo. 541; *City of St. Louis v. Weber*, 44 Mo. 547; *City of Lamar v. Wiedman*, 57 Mo. App. 507; *Kelly v. Meeks*, 87 Mo. 396; *City of Plattsburg v. Riley*, 42 Mo. App. 18; *Evison v. R'y*, 45 Minn. 375. (4) It being conclusively proven that plaintiff did not look for an approaching train from the west, when, if looking, he could have seen, and there being no evidence of such disregard for the safety of plaintiff after he was discovered to be in danger by defendant's servant, appellant was entitled to a peremptory ruling of the court to find for defendant. *Yarnell v. R'y*, 75 Mo. 575; *Corcoran v. R'y*, 105 Mo. 645; s. c., 95 Mo. 279.

*John L. Wheeler* and *Harvey W. Jones* for respondent.

(1) There was no language in instructions 5 and 6 asked by plaintiff and given by the court that would permit the jury to allow for loss of time, or for "medical attendance, hospital bills, etc." *Murray v. R'y*, 101 Mo. 124. (2) Railway companies are liable in a private action at the suit of party injured by violation of ordinance, although a pecuniary penalty is imposed for its nonperformance. Such violation of an ordi-

nance is negligence *per se.* *Bluedorn v. R'y*, 108 Mo. 439; *Gratiot v. R'y*, 116 Mo. 451; *Prewitt v. R'y*, 36 S. W. Rep. 667; *Fath v. R'y*, 105 Mo. 537; *Robison v. Chamberlain*, 34 N. Y. 389; *Fulton, etc., Co. v. Baldwin*, 37 N. Y. 648; *Johnson v. Beldon*, 47 N. Y. 130; *Parker v. Bernard*, 135 Mass. 116; Cooley on Torts, 784. (3) Municipal corporations are *prima facie* the sole judges of the necessity of these ordinances, and courts will not ordinarily review the reasonableness where passed in strict pursuance of an express grant of power. *St. Louis v. Spiegel*, 8 Mo. App. 478; *Plattsburg v. Riley*, 42 Mo. App. 18; *Hannibal v. Telegraph Co.*, 31 Mo. App. 23; *St. Louis v. Green*, 7 Mo. App. 468; *State v. Pond*, 93 Mo. 606. (4) The appellant was by the court permitted to introduce all the evidence it offered in regard to the reasonableness of the ordinance in question. The reasonableness of the ordinance was a question for the court to decide and not the jury. The court did not commit error in giving of its own motion instruction 3 in regard thereto. *Neier v. R'y*, 12 Mo. App. 26; *White v. R'y*, 44 Mo. App. 542; *Commonwealth v. Worcester*, 3 Pick. 461. (5) Though the party injured may have been guilty of negligence, and though that negligence may in fact have contributed to the injury, yet if the defendant could by the exercise of ordinary care and diligence, after the situation became apparent to him, or after it would have been apparent to him, had he been in the exercise of due care, have avoided the mischief which happened, the negligence of the injured party will not excuse the defendant. The negligence of respondent occurring prior to the negligence of the appellant will not excuse appellant. *Sullivan v. R'y*, 97 Mo. 113; *Hanlon v. R'y*, 104 Mo. 381; *Reardon v. R'y*, 114 Mo. 384; *Sullivan v. R'y*, 117 Mo. 214; *Bunyan v. R'y*, 127 Mo. 12; *Chamberlain v. R'y*, 133 Mo. 587.

SMITH, P. J.—This is an action to recover damages for personal injuries alleged to have been received by the plaintiff in consequence of the negligence of the defendant. The plaintiff had judgment and the defendant appealed. The errors complained of arise out of the action of the trial court in the giving and refusing of instructions.

During the progress of the trial the plaintiff, to maintain the issue in his behalf, introduced in evidence an ordinance of Kansas City which declares that "no conductor, engineer or fireman, brakeman or other person shall move or cause to be moved, any locomotive, tender or car within the city at a greater rate of speed than six miles an hour" under a certain penalty therein prescribed. Thereupon the defendant introduced evidence the tendency of which was to prove that from a mile and a quarter to two miles of its railway track is within the limits of said city; that Elm Dale station—a flag station on its line and the point at which plaintiff was injured—is located a mile or more east of Grand Central depot, but within the city limits; that the defendant runs its cars between Grand Central depot in said city and the city of Independence; that its line, after crossing the tracks of the Missouri Pacific Railway, near Grand Central depot runs to the south shore of the Missouri river and from thence on a high embankment it meanders with said shore in an easterly direction until it passes Elm Dale station some distance; that on the north or river side of its track there are no houses or improvements of any kind between where the same crosses the tracks of the Missouri Pacific Railway and a quarter of a mile or more east of Elm Dale station; that none of the streets of said city extend across it to the river; that there are no houses on the south side thereof within the limits just indicated

nearer than about three hundred feet; that abutting against the right of way on the south side and extending for several miles are small plantations or market gardens; that between the Missouri Pacific crossing and Elm Dale there is a wagon crossing; that the Milwaukee railway crossing is some two miles east of Elm Dale and between these two points and a quarter of a mile or more east of the latter there are some houses and perhaps one or more elevators situate on the north side of its track; that a competing railway between said cities habitually runs its cars after entering within the city limits at a rate of speed exceeding ten miles an hour, which we may presume is authorized by an ordinance of the city.

The court, by request of plaintiff, and against the objections of defendant, gave an instruction which told the jury that, "if you believe from the evidence that on the night of August 2nd or 3rd, 1895, locomotive engines and trains of cars were by an ordinance of Kansas City prohibited from being run within the corporate limits of said city at a greater rate of speed than six miles per hour, and that on said day defendants, by their servants, did run an engine and train of cars, known as the 'backover' within the corporate limits of said city at a greater rate of speed than six miles per hour; and that plaintiff was sitting in a position on said platform where he was in danger of being struck by said train, and that in consequence of said train being run at said time and place at a greater rate of speed than six miles per hour defendant's servants running said train were unable to stop the same after they saw plaintiff in danger, or by the exercise of ordinary care could have seen that plaintiff was in danger of being struck by said train, in time to have avoided striking and injuring plaintiff, and that had said train been running at said time and place at a rate

of speed not to exceed six miles per hour it could by the exercise of ordinary care on the part of defendant's said servants have been stopped, after plaintiff was discovered, or by the exercise of ordinary care could have been discovered, in danger of being struck by said train, in time to have avoided striking and injuring plaintiff, then the jury may find defendant guilty of negligence.''

The defendant asked and the court refused an instruction which in effect declared that the said ordinance introduced in evidence had no binding force or effect against defendant as to the operation of its trains at and near Elm Dale station and that it could not be found guilty of negligence for the reason that it ran its train faster than six miles an hour at the time plaintiff was injured. The defendant contends that the said ordinance is inoperative and void because unreasonable, oppressive, and operates as a restraint upon commerce.

Section 26, article 3, of the charter of Kansas City confers power upon the city council to regulate by ordinance the speed of locomotive engines and cars within the city limits. The power to pass the ordinance assailed is expressly conferred. The rate of speed to be allowed is left, however, to the discretion of the municipal council and when that body exercised its discretion and judgment in passing the ordinance it was *prima facie* valid. *Evison v. R'y*, 45 Minn. 370. Where the power to legislate on a given subject is conferred and the mode of its exercise is not prescribed, then an ordinance passed in pursuance thereof must be reasonable or it will be pronounced invalid. Dillon's Municipal Corp., sec. 328; Elliot on Railroads, sec. 1082. Or, as said in *R'y v. Trenton*, 53 N. J. Law, 132, ''if any ordinance is based upon a general power and its provisions are more specific and detailed

KANSAS City freehold charter: ordinance governing speed of trains.

than the expression of the power conferred, the courts
will look into the reasonableness of such provisions.
And when an ordinance is altogether unreasonable and
oppressive it may be vacated by the courts for that
reason alone." *Corrigan v. Gates*, 68 Mo. 545; *R'y
v. Springfield*, 85 Mo. 674; *Kelly v. Meeks*, 87 Mo.
401; *St. Louis v. Weber*, 44 Mo. 547; *Plattsburg v.
Riley*, 42 Mo. App. 18; *Kansas City v. Cook*, 38 Mo.
App. 660; *Lamar v. Wiedman*, 57 Mo. App. 507;
*Hannibal v. R'y*, 31 Mo. App. 28.

"The chief and primary object of ordinances regu-
lating the speed of trains in cities is undoubtedly the
protection of the public on streets at grade crossings
and other places on the line of the railroad where
they are accustomed to have the right to go.   It is
self-evident that a limitation of the rate of
——: ——: Inde-
pendence Air  speed might be reasonable in the thickly
Line.
populated and crowded portions of a city,
where continuous buildings obstruct the view of ap-
proaching trains and where the noise and bustle of
travel and business are apt to prevent people from
hearing the approach of a train which would be wholly
unnecessary and unreasonable in the large tracts of
sparsely populated territory of merely rural character
now so often included in corporate limits of cities."
*Evison v. R'y, supra*.   In *Meyers v. R'y*, 57 Iowa,
552, which was an action to recover damages for
killing of a cow within the city limits, an ordinance of
the city was in evidence which prohibited the running
of railroad trains at a greater speed than four miles an
hour.   The court, in the course of its opinion in the
case, say that under the ordinance in question in this
case it would take three quarters of an hour after
entering the corporate limits to pass over three miles
of railroad through agricultural lands found on both
sides to reach the inhabited portion of the city, etc.

One of the objects of railroads is to secure quick transportation for freight and passengers. The ordinance in question not only places an unreasonable restriction upon the railways themselves, but it unreasonably impedes the whole traveling public. No necessity has been shown and none certainly exists for limiting railways to a speed of four miles an hour for three miles before they enter the inhabited portion of a city whilst passing through agricultural lands fenced on both sides   *   *   *.   The ordinance operates as a restraint upon commerce and ought not to be sustained. *Burg v. R'y*, 90 Iowa, 106, was where a train, running at a speed greater than allowed by an ordinance of the city of Des Moines, killed a child at a point on both sides of which, for a long distance, no platted streets were open across the track and where the right of way was fenced on both sides, and it was held that as to the place of killing the ordinance was unreasonable and void.

In *White v. R'y*, 44 Mo. App. 540, there was an ordinance which prohibited the running of railway trains within the limits of the city of Marshfield at a greater rate of speed than four miles an hour. The incorporated area of the city covered one square mile and the defendant's railway ran diagonally through it for over a mile; only two hundred and twenty acres of the city tract was platted, and the population of the city did not exceed fifteen hundred. The negligence alleged in the petition was that the defendant run a train within the territorial limits of the city at a rate of speed in excess of four miles an hour and by reason of which a cow of the plaintiff was killed. In deciding the case the court say: "The restriction, if valid at all, extends over the entire area. As far as the farm lands are concerned, the necessity of any restriction whatever is not obvious, and as far as the residents of

the town are concerned, the necessity of a restriction to four miles an hour which, as we know, is less than the maximum speed permitted in the most populous cities in this state, is equally not apparent. In the absence of any necessity shown the restriction is clearly unreasonable. If one city may adopt it, they all may, and thereby make rapid transit, in which the people of the entire state are interested, an impossibility."

No reason has been shown, nor has any been seen by us, why the speed of the defendant's trains should be reduced on that part of its road situate between the eastern city limits and the crossing of the Missouri Pacific Railway. The defendant's track, for the most of the way, is on a high embankment on the north side of which there is nothing but the unused river shore and on the south side there are only agricultural lands. There are no street intersections and only one or two public traveled roads crossing its track. People do not habitually go along or over its track. What, then, is the necessity for the restriction? It seems to us that it is so manifestly unnecessary for the protection of life and property that no two reasoning minds could differ as to it.

It is well known that a great number of people, who are engaged in commercial and other pursuits in Kansas City, reside at Independence, Fairmount Park, and near other stations along the line of defendant railway, and to successfully carry on their business must have the advantage of rapid transit to and from the city. Why oblige the trains of defendant, while engaged in carrying them to and from the city, to take twenty to twenty-five minutes in running the two miles or less between the eastern limits of the city and the Missouri Pacific crossing, which could, and no doubt would be accomplished in five minutes or less, but for the restriction imposed by said ordinance? This need-

less interference with rapid transit on defendant's railway injuriously affects the traveling public and the defendant alike. There appears to be no greater necessity for imposing the restriction on defendant in running its trains in the city between the points already indicated than there is between the eastern limits of the city and Independence, where no rate of speed would be negligence *per se*. By imposing the restriction the defendant is placed at a disadvantage with other and competing lines between the two cities and it is therefore oppressive and discriminating in its character. Within the populous parts of the city the ordinance is perhaps well enough, but in the sparsely settled parts thereof it is unreasonable and in restraint of suburban travel and can not be upheld.

The validity of the ordinance depends upon the question, as we have seen, whether it is reasonable and necessary, and whether so or not is a question of fact to be determined by the court and not by

ORDINANCE: rea-
sonableness:
question for the
court.

the jury. It would seem quite anomalous to leave it to a jury to decide whether an ordinance is valid or not. *White v. R'y*, *supra*. It follows from the foregoing considerations that the plaintiff's instruction should have been refused and that of the defendant given.

The plaintiff's sixth instruction, in relation to the measure of damages, which declared that the jury should allow him such damages as would compensate him for his losses and suffering, both past

DAMAGES: in-
struction: evi-
dence.

and future, as would, in their judgment, reasonably result to him, was, under the pleadings and evidence, calculated to mislead the jury. In the petition it was alleged that plaintiff, by reason of his injuries, was compelled to and had expended the sum of $500 for medical bills, hospital bills, medicines, nursing and care. The evidence tended to show that

a physician and surgeon had attended plaintiff after his injury for several weeks and that during that time he had been in a hospital receiving care and attention there. But there is not the slightest evidence as to the value of any of the services so rendered the plaintiff. There was no evidence before the jury by which they could estimate the reasonable value of these important services to plaintiff. And yet it can hardly be doubted that the jury, in passing upon the demand of plaintiff as set forth in his petition, did conjecture the value of such services at some amount and include the same in their estimate of the aggregate amount of damage found to have been sustained. These elements should have been excluded from the consideration of the jury in the absence of some proof of value, and the instruction should have been framed accordingly.

The court, upon its own motion, gave this instruction: "The court instructs the jury that the plaintiff was guilty of negligence contributing to the injury in sitting on the platform in question so near as to be hit by a passing train; and in not looking westward for an approaching train; and it is the duty of plaintiff before he can recover in this case to prove by the preponderance of the evidence that the defendants' servants did or could by the exercise of ordinary care have discovered the plaintiff in a dangerous position, and have stopped the train before hitting plaintiff and after having discovered, or by the exercise of ordinary care might have discovered that he was in a dangerous position."

NEGLIGENCE: contributory: personal injury: instruction.

It is not quite as clear and explicit in expression as it should have been. It would have been exempt from criticism had it been expressed in about this wise: The court instructs the jury that notwithstanding they believe from the evidence the plaintiff negligently

placed himself in a dangerous situation on the defendant's platform, if such situation was one of danger, and was negligent in not observing the defendant's approaching train or was negligent in any other manner, yet if they further believed from the evidence that the defendant's servants operating such approaching train saw plaintiff was in a dangerous situation, or by the exercise of reasonable care on their part might, have discovered his situation and that the same was dangerous, in time to have averted the injury by using ordinary diligence, then their verdict should have been for the plaintiff; and in making up their verdict as to the care and diligence to be exercised by defendant's servants in the premises they might take into consideration all the facts and circumstances in evidence connected with the case.    *White v. R'y*, 34 Mo. App. *loc. cit.* 66, 67.

The action of the court in refusing the other numerous instructions asked by the defendant was not error. We think the plaintiff was clearly entitled, under the evidence, to a submission of the case to the jury but on account of the errors already noticed the judgment must be reversed and the cause remanded, and which is so ordered.    All concur.