## LUSK et al. v. TOWN OF DORA.

(District Court, N. D. Alabama, Jasper Division. July 31, 1915.)

### No. 5.

1. INJUNCTION ⬥105—RESTRAINING ENFORCEMENT OF MUNICIPAL ORDINANCES—JURISDICTION.

   A court of equity has jurisdiction to restrain the enforcement by criminal prosecution of a municipal ordinance, void because violative of the federal Constitution, because unreasonable.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. ⬥105.]

2. MUNICIPAL CORPORATIONS ⬥625—ORDINANCES—VALIDITY—PRESUMPTIONS.

   An ordinance regulating the speed of trains, enacted as an exercise of the police power of the municipality delegated to it by its charter, is presumptively reasonable and valid, and not in conflict with the federal Constitution, but the presumption may be rebutted.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. ⬥625.]

3. MUNICIPAL CORPORATIONS ⬥625—REASONABLENESS OF ORDINANCE—QUESTIONS OF LAW.

   The reasonableness of a municipal ordinance, while a question of law, depends on the particular facts in each case.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. ⬥625.]

4. COMMERCE ⬥58—INTERSTATE COMMERCE—MUNICIPAL ORDINANCE—VALIDITY.

   An ordinance of an incorporated town, approximately 1⅕ miles in extent, with a population of about 1,000 and serving numerous mining camps as a station, which limits the speed of interstate trains to 6 miles an hour, imposes an unreasonable burden on interstate commerce, and is unenforceable on that ground, where the track is laid on the railroad company's private right of way, unfit for passage by pedestrians or vehicles except at crossings, four of which are at grade, and where the difficulties in the operation of trains by reason of physical conditions will be increas-

ed by the low speed, and where the dangers created by the passage of trains at a greater speed may be avoided by flagmen.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86, 100; Dec. Dig. ⊛=58.]

In Equity. Suit by James W. Lusk and another, receivers of the St. Louis & San Francisco Railroad Company, against the Town of Dora, to enjoin the enforcement of a municipal ordinance. Motion to dismiss bill denied, and injunction prayed for conditionally granted.

Forney Johnston, of Birmingham, Ala., for plaintiffs.
Gunn & Powell, of Jasper, Ala., for defendant.

GRUBB, District Judge. The bill in this case was filed by the receivers of the St. Louis & San Francisco Railroad Company to enjoin the enforcement of a municipal ordinance of the incorporated town of Dora limiting the speed of trains within the corporate limits of the town to 6 miles an hour. The plaintiffs contend that the ordinance is unreasonable in its limitation and in violation of the federal Constitution: (1) Because it deprives the plaintiffs of their property without due process of law; (2) because in the manner of its enforcement a discrimination is worked against the plaintiffs, and they are thereby deprived of the equal protection of the laws; and (3) because, if unreasonable, it operates to burden the interstate commerce conducted by the receivers. The defendant denies that the ordinance is unreasonable in its terms, or that it operates as a burden on the interstate commerce conducted by the receivers, and asserts that it is equally enforced against all railroads operating within the corporate limits of the town.

[1] The jurisdiction of a court of equity to restrain the enforcement of a municipal ordinance by criminal prosecutions, void because violative of the federal Constitution, because of its unreasonableness, is undoubted. If the ordinance complained of is unreasonable, no other question need be considered.

[2] It is conceded that the town of Dora has the power to regulate the speed of trains within reasonable limits, in the exercise of the police power of the state delegated to it by its charter, without coming in conflict with any provision of the federal Constitution. There is a disputable presumption that, when it had done so by ordinance, the ordinance is reasonable and valid. The authority of the courts in the premises is thus expressed in 7 Encyc. Supreme Court Reports, page 354:

"A state statute directed against, or which imposes, a direct burden upon, or substantially prohibits, either foreign or interstate commerce, is void, though it be enacted in the exercise of the police power. Whether state statutes go beyond the danger to be apprehended, and are something more than exertions of the police power, is not a question for the Legislature, but is one for the courts to determine. And as the range of the police power sometimes comes very near to the field committed by the Constitution to Congress, it is the duty of the courts to guard vigilantly against any needless intrusion."

In the case of Hendrick v. Maryland, 235 U. S. 610, 622, 623, 35 Sup. Ct. 140, 142, 59 L. Ed. ——, the Supreme Court said:

"The reasonableness of the state's action is always subject to inquiry, in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress."

[3, 4] The evidence shows that the corporate limits are approximately 1⅕ miles in extent; that the track of the plaintiffs is at a different and higher level than that of the town; that the railroad is on a high trestle as it passes through the western part of the town; that one street crosses under the trestle, and four other streets, only one of which is considerably traveled, cross the railroad, within the corporate limits, at grade; that the railroad track, through the corporate limits, is curved at several places, and runs also through cuts and upon embankments, presenting physical obstacles to successful operation at low speeds, and obstructing the passage as well as the vision of those crossing or walking along the track. Dora is a town of about 1,000 inhabitants, but serves numerous mining camps as a station. There is evidence submitted as to character and frequency of accidents within the town limits, caused by trains, during the period of the past three years. The plaintiffs, since the filing of this suit, have stationed a flagman at the main crossing during the daylight hours. Other facts reflecting on the necessity or absence of necessity for the maintenance of low speed through the corporate limits appear in the record.

The plaintiffs cite the cases of Meyers v. C., R. I. & P. R. R. Co., 57 Iowa, 555, 10 N. W. 896, 42 Am. Rep. 50, Evison v. Chicago, etc., R. R. Co., 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434, City v. Hagenbush, 98 Mo. App. 669, 73 S. W. 725, Zumault v. K. C. & I. A. L. Ry. Co., 71 Mo. App. 670, White v. St. L. & S. F. Ry. Co., 44 Mo. App. 540, and Burg v. Chicago, etc., R. R. Co., 90 Iowa, 106, 57 N. W. 680, 48 Am. St. Rep. 419, to the effect that speed ordinances of from 4 to 6 miles an hour are unreasonable. The defendant relies upon the cases of King v. Oregon R. & Nav. Co., 51 Or. 191, 93 Pac. 141, 94 Pac. 504, Buffalo v. New York, L. E. & W. R. R. Co., 152 N. Y. 276, 46 N. E. 496, Missouri, K. & T. R. R. Co. v. Owens, (Tex. Civ. App.) 75 S. W. 579, Washington Ry. Co. v. Lacey, 94 Va. 460, 26 S. E. 834, Chicago & A. R. R. Co. v. Carlinville, 200 Ill. 314, 65 N. E. 730, 60 L. R. A. 391, 93 Am. St. Rep. 190, and St. Louis Southwestern Ry. Co. v. Bolton, 36 Tex. Civ. App. 87, 81 S. W. 123, to the contrary effect.

The reasonableness of an ordinance, while a question of law, is dependent upon the particular facts in each case, and decisions in other cases are to be distinguished for this reason, though persuasive where the facts are similar. In this case, it cannot be said that the railroad passes through a densely populated territory in passing through Dora. The use of the track by citizens, owing to the topography of the land, is largely confined to the street crossings, of which four cross the track at grade, and only one is very considerably traveled. The track is not laid in a public street, within the corporate limits, but on the privately owned right of way of the railroad, and is not left fit for passage of pedestrians or vehicles along the line longitudinally. The only considerable points of danger are the grade crossings.

The operation of trains through the town is made difficult by the

grade and curvature of the railroad. These difficulties of operation are intensified when trains are limited to as low a speed as 6 miles an hour. When this low speed is required to be maintained for as great a distance as 1⅕ miles, the effect of the restriction upon the schedules of fast trains is disastrous, especially when it is considered that other incorporated towns have and may exercise the same right, if the defendant has it. Under modern conditions of transportation, a speed of much in excess of 6 miles an hour cannot be said to be a dangerous rate of speed, except through densely populated territory. It is an inadequate rate of speed. That such considerations are to be given weight by the courts is the holding of the Supreme Court in the case of Cleveland, etc., Ry. Co. v. Illinois, 177 U. S. 514, pages 521, 522, 20 Sup. Ct. 722, page 725 (44 L. Ed. 868). The court said:

"It is evident that the power attempted to be exercised under this statute would operate as a serious restriction upon the speed of trains engaged in interstate traffic, and might, in some cases, render it impossible for trunk lines running through the state of Illinois to compete with other lines running through states in which no such restrictions were applied. If such passenger trains may be compelled to stop at county seats, it is difficult to see why the Legislature may not ·compel them to stop at every station—a requirement which would be practically destructive of through travel, where there were competing lines unhampered by such regulations. While, as we held in the Lake Shore Case, railways are bound to provide primarily and adequately for the accommodation of those to whom they are directly tributary, and who not only have granted to them their franchise, but who may have contributed largely to the construction of the road, they are bound to do no more than this, and may then provide special facilities for the accommodaton of through traffic. We are not obliged to shut our eyes to the fact that competition among railways for through ·passenger traffic has become very spirited, and we think they have a right to demand that they shall not be unnecessarily hampered in their efforts to obtain a share of such traffic. It is evident, however, that neither the greater safety of their tracks, the superior comfort of their coaches or sleeping berths, nor the excellence of their tables would insure them such share, if they were unable to compete with their rivals in the matter of time. The great efforts of modern engineering have been directed to combining safety with the greatest possible speed in transportation, both by land and water. The public demand this, the railway and steamship companies are anxious in their own interests to furnish it, and local legislation ought not to stand in the way of it. With no disposition whatever to vary or qualify the cases above cited, neither the conclusions of the court nor the tenor of the opinions are opposed to the principle we hold to in this case, that, after all local conditions have been adequately met, railways have the legal right to adopt special provisions for through traffic, and legislative interference therewith is unreasonable, and an infringement upon the provision of the Constitution which we have held requires that commerce between the states shall be free and unobstructed."

In view of the undisputed injury that will result to the plaintiffs in their operation of the railroad, both in the matter of maintaining schedules and the physical injury likely to happen to trains, when operated at so low a speed as 6 miles an hour, under the unfavorable conditions such as the evidence shows exist in passing through Dora, it is clear tnat, if there is a method of reasonable avoidance of or minimizing the dangers incident to the passage of trains through the corporate limits of Dora, which does not necessitate the maintenance of such a low rate of speed, it should be adopted in lieu of the reduced speed requirement of the ordinance.

In view of the fact that the railroad, owing to the conformation of its right of way, as compared with the level of the town and its general character, cannot well be used for travel throughout its length, but only at the points of crossing of the streets and the railroad, it would seem that a method which conserved the safety of the public in crossing the railroad at the street crossings would answer the exigency, and if this could be accomplished, without requiring the railroad to reduce the speed of its trains to as low a rate as 6 miles an hour, it would be an unreasonable burden on interstate commerce to exact of it such a maximum speed requirement. It seems to me clear that the grade crossings, even if they are four in number, as contended by the defendant, can be adequately protected by flagmen against the passage of the plaintiffs' trains over the crossings at a very much greater speed than 6 miles an hour.. There is now a flagman at the principal crossing. The present record is not convincing as to whether flagmen are required at the other crossings, or whether the present arrangement affords adequate protection. The court is not authorized to determine what would be a reasonable maximum speed limit for the railroad to operate under, but is limited to a declaration that the present ordinance, fixing a maximum speed of 6 miles an hour, is an unreasonable burden on interstate commerce and unenforceable against plaintiffs for that reason. This finding is predicated upon the idea that the danger to be apprehended can be adequately guarded against by properly protecting the crossing or crossings that need protection by flagmen, without unnecessarily impeding the plaintiffs' operation of the railroad by so stringent a speed limit.

The injunction prayed for will be granted, upon condition that the plaintiffs, during the period of its operation, maintain, within the corporate limits of Dora, adequate protection against the hazards arising from the operation of trains across the town streets, at grade, to those using such streets, and the cause will be retained for the purpose of entertaining any application that may hereafter be presented by defendant to modify or dissolve the injunction, in the event the plaintiffs do not continue to supply adequate crossing protection after the passing of the decree. If the town of Dora has the power, under its charter, to require the railroad company to protect the point or points of crossing the public streets by the railroad with flagmen, resort to this court would be unnecessary.