## TERRY v. CITY OF DALLAS.

### No. 13378.

Court of Civil Appeals of Texas. Dallas.

May 28, 1943.

Rehearing Denied June 25, 1943.

Second Rehearing Denied Oct. 22, 1943.

Eugene De Bogory, Geo. T. Burgess, and Carloss Morris, all of Dallas, for appellant

H. P. Kucera, City Atty., and A. J. Thuss and R. L. Dillard, Jr., Asst. City Attys., all of Dallas, for appellee.

LOONEY, Justice.

The City of Dallas sought to enjoin W. E. Terry from operating a used parts and automobile wrecking business in a district zoned for dwellings. Appellant, answering, alleged that his business was a nonconforming use within the meaning of the zoning ordinance; however, as the court sustained special exceptions to that portion of the answer, and the ruling of the court not having been assigned as error, that issue will not be discussed. Appellant alleged further that the classification of the area as a dwelling district, as applied to his place of business, was unreasonable, arbitrary, discriminatory, without any substantial relation to either the public health, safety, morals or the general welfare of the community, therefore, was unconstitutional and void. On hearing, the court overruled the exception urged by appellant, involving the prayer for a temporary injunction, and granted such relief, restraining appellant from using his premises for the purposes for which it had formerly been and then was being used; from which order, this appeal was prosecuted.

Appellant urges for reversal, among others, the following points of error, that is, (1) that the temporary writ destroyed the status quo and effectually disposed of the case before trial on its merits; (2) that the court erred in excluding the testimony of witnesses bearing upon the questions involved.

These questions will be discussed. The doctrine recognized by many judicial pronouncements in this State, aptly stated in James v. E. Weinstein & Sons, Tex. Com.App., 12 S.W.2d 959, 961, is that: "If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had theretofore existed, and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction . is merely to preserve the existing condition until a final hearing can be had on the merits. The court is without authority to divest a party of property rights without a trial and any attempt to do so is void."

The record discloses that when appellant purchased the property in 1937, it was being used as an automobile wrecking

and used parts business and he simply continued such business until the controversy arose between him and the City authorities. Status quo, as that term is used in this connection, means "the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered." See City of Farmersville v. Texas-Louisiana Power Co., Tex.Civ.App., 33 S.W.2d 272, 275; Gill v. Hudspeth County, Tex.Civ.App., 88 S.W.2d 517.

As stated above, appellant simply continued the business conducted on the premises prior to his purchase in 1937, and although the zoning ordinance was adopted in 1929, his right to continue the business was not questioned by City authorities until in December, 1938; he then applied for a permit of occupancy, which being denied by the building inspector on the ground that the zoning ordinance forbade such business in the district, appellant appealed to the Board of Adjustment, and, on hearing, that body granted him a two-year temporary permit on condition that the lot would be cleared of rubbish, etc. In February, 1941, he was notified by the inspector that the temporary permit had expired and that further use of the property as an automobile wrecking yard would be in violation of the zoning ordinance; thereupon, appellant again applied to the Board of Adjustment for a certificate of occupancy and was granted another temporary permit for one year, which stated that, at the expiration of the year, the use of the property as an automobile wrecking yard would cease. In January, 1942, appellant was again notified by the inspector to discontinue the use of the premises for such purpose, and again appellant appealed to the Board for a permit to continue such use, which was denied; the present suit was thereafter filed on June 19, 1942, and the temporary writ of injunction issued, requiring appellant to immediately cease the operation of such business.

What was the status quo at the time the writ issued? As before shown, when appellant purchased the property in 1937, it was being used as an automobile wrecking and used parts business, and this use continued without molestation by City authorities until December, 1938, and, on application for occupancy permits, the Board condoned such use for three years longer. From this, we think the conclusion inescapable that the status quo was the use

made of the property when appellant's right to continue was first challenged in 1938; and this status being recognized, continued and condoned by the authorities until February, 1942, in our opinion, was its status when the suit was filed in June, 1942.

Under what circumstances is it proper to grant all the relief sought on a temporary hearing? In City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599, 602, this Court, although approving the issuance of such process in that case, took occasion to say: "As above stated, the proof clearly disclosed the inevitable final result. To all intents and purposes there was a final hearing. The record conclusively establishes that a different judgment could not be entered upon a final hearing. This court constantly has been mindful of the severity and extraordinary nature of the remedy granted. It is one to be accorded only in cases of extreme distress, and only with the greatest caution; but that it was properly granted in this case is a proposition not without sound authority to sustain it. 14 R.C.L. pp. 317–319, and authorities there cited." And again this Court, in Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ.App., 54 S.W.2d 190, 193, announced the same doctrine, saying: "This doctrine has been proclaimed and applied in this as well as in other jurisdictions; in instances where it is made to appear that the complainant was entitled to a final mandatory injunction, a temporary writ similar in its scope and effect issued, although the temporary writ granted all the relief that could be obtained upon a final decree, and thus practically disposed of the whole case." (With full citation of authorities.)

Was the instant case within the rule announced in these cases? We do not think so. The evidence neither indicates an inevitable final result favorable to appellee, nor that a different judgment could not be entered on final hearing; on the contrary, the evidence introduced by appellant on the defensive issue pleaded, that is, that the zoning ordinance classifying his property as residential was without substantial relation to either the public health, safety, morals or general welfare of the community, although not conclusive, yet we think was sufficient to have authorized a verdict in his favor. Appellee argues, however, that "Whether or not a classification in a zoning ordinance is so

unreasonable or arbitrary as to be unconstitutional is a question of law for the court to decide." To this, we cannot agree. The question becomes one of law only when the facts are ascertained, and the ascertainment of disputed facts is the province of the jury. In Houston & T. C. R. Co. v. Dallas, 98 Tex. 396, 84 S.W. 648, 654, 70 L.R.A. 850, the Supreme Court used the following pertinent language; it said: "The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid. In others the question may depend upon their operation upon particular persons or conditions of fact which cannot be known to the court until made to appear by evidence. Their effect may be just and reasonable in general, but in particular instances may be arbitrary and oppressive to the extent of invading fundamental rights. Evison v. Chicago, etc., R. Co. ([45] Minn. [370]) 48 N.W. 6, 11 L.R.A. 436; State v. [Inhabitants of] City of Trenton ([53] N. J. [L.132]) 20 A. 1076, 11 L.R.A. 412. In such cases the court can only determine as to the validity or invalidity of the ordinance when the facts upon which the question depends are established; and, if they are in dispute, they are to be determined like other matters of fact, the question of validity still being one of law for the court to decide." To the same effect, see City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038.

Appellant offered to prove by Mr. Eastus, a qualified expert, that the property in question was without value for residential purposes and suitable only for the use being made of it; also offered to prove by Mr. Kershaw, who was thoroughly familiar with the property, the different uses to which it had been subjected since 1924. This testimony was excluded on objection, and appellant assigns error. We think the court erred, as the testimony, in our opinion, tended to show the status of the property when appellant's right to its continued use was first challenged by City authorities; also tended to establish the defensive issue pleaded.

In harmony with the views herein expressed, the order granting the temporary injunction, restraining appellant from the further prosecution of his business, is dissolved and the application for temporary injunctive relief is dismissed.

Reversed and rendered.

## On Rehearing.

After due consideration the Court overrules appellee's motion for rehearing.

Speaking for himself exclusively, the writer adds the following: As stated in the original opinion, appellant urged two defenses to the action by the City; that is, that his use of the premises for the business being pursued constituted a nonconforming use, and further, that the classification of the area as a dwelling district, as applied to his business, was unreasonable, arbitrary, discriminatory, unconstitutional and void. The trial court having sustained a special exception to the plea setting up nonconforming use as a defense, and the ruling of the court not having been assigned as error, that matter was not brought under discussion; therefore, neither the case of Washington v. City of Dallas, Tex.Civ.App., 159 S.W.2d 579, by this Court (the decision of which turned on the issue of nonconforming use), nor its probable conflict with the rule announced by the Supreme Court in the earlier case of City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229, was mentioned or discussed.

In the written argument filed in support of its motion for rehearing, appellee contends that the decision in the instant case is in conflict with the rule announced in the Washington case [159 S.W.2d 580], wherein it was stated that: "A claim to a nonconforming use under zoning ordinances is uniformly determinable by appeal to a Board of Adjustment from an order of the Building Inspector (or similar administrative official), and then by certiorari to the courts. (Citing authorities.) Appellant could have directly sought relief in the district court from adverse rulings of this Board of Appeals, Art. 1011g, Vernon's Ann.Civ.St., but this he failed to do. It would follow, we think, that the judgment of appellee's Board, being in its nature semijudicial, is not subject to collateral attack." (No application for writ of error was filed.) Appellee also refers to the earlier Stapf case by the Supreme Court, and answering the contention by appellant in his brief, that the rule announced by this Court in the Washington case conflicted with the rule previously announced by the Supreme Court in the Stapf case, appellee undertook the task of distinguishing these cases, and reached the conclusion that they were not in conflict but harmonious and reconcilable. To this con-

clusion I cannot agree, and will state my reasons.

At the time the Washington case was decided, I had not read the Stapf case. I think the cases are in irreconcilable conflict, and that the Supreme Court gave an entirely different construction to the statute involved, and announced a doctrine contrary to that announced by this Court in the Washington case. The Supreme Court held in effect, that the jurisdiction of the Board of Adjustment, under Art. 1011g, was limited to the consideration of applications for special exceptions to and variance from the terms of the zoning ordinance; consequently, the Board was without jurisdiction to determine the existence whether or not of a nonconforming use, or the validity whether or not of the zoning ordinance as applied to the particular property. With reference to these larger and more important questions, the Supreme Court held that the owner was entitled to direct access to the courts. Among other things, the court said [129 Tex. 81, 101 S.W.2d 232]: "We answer the second question in this manner: Under the special and peculiar facts of this case appellee was not required to prosecute an appeal from the action of the Board of Adjustment by certiorari, as prescribed by the statute and the ordinance, but could institute this independent action. This answer is predicated upon the fact that in the last analysis the only question really involved in this proceeding is the validity of the zoning ordinance itself, in so far as it classifies foundries in the second manufacturing district and prohibits the construction and operation of a foundry at 1210 Johnson street. The question of whether or not an ordinance prohibiting the construction of a particular kind of building, or preventing a particular kind of use, at a particular location, is unreasonable, arbitrary, or discriminatory, is a question peculiarly within the province of the courts. An owner of property is entitled to direct access to the courts for the purpose of litigating such question, regardless of whether the zoning ordinance has made provision therefor or not."

So, as construed by the Supreme Court, the jurisdiction of the Board of Adjustment, under Art. 1011g, being limited to the consideration of applications for special exceptions to and variances from the terms of the zoning ordinance, the conclusion is inescapable that, the Board was without authority to determine the exist-

ence whether or not of a nonconforming use, or whether or not, as applied to the property in question, the zoning ordinance was unreasonable, arbitrary and void. On these questions, it seems that the owner has direct access to the court and is not required to present them to the Board for adjudication. Although appellant was not required, yet was not prohibited from asking the Board for a permit of occupancy, based on the ground that his premises constituted a nonconforming use within the meaning of the zoning ordinance; however, on being refused, after the Board had granted temporary permits for three years, I do not think he was required to appeal by certiorari from the action of the Board to the District Court, but was privileged, either to enter court and offensively urge the right to the continued use of the property as a nonconforming use, and/or on the ground that, as applied to his property, the zoning ordinance was unconstitutional and void; or continue such use of his property (as he did) and when sued by the City, urge these grounds defensively. The action of the Board of Adjustment in the premises, being without jurisdiction, was void, settled nothing, and, in my opinion, appellant was not concluded thereby.

The above expresses the views of the writer, however the Court overrules appellee's motion for rehearing.

YOUNG, Justice.

This suit by City of Dallas sought to enjoin appellant from operating his used parts and automobile wrecking business in a residential district; the defense urged thereto being (1) that defendant had a nonconforming use at the time the zoning ordinance was enacted; and (2) that the classification of the particular area as a dwelling district was unreasonable, arbitrary and discriminatory, without substantial relation to the public health, safety, morals, or general welfare of the community; hence, unconstitutional and void. Upon trial to the court of the City's application for preliminary injunction, after ruling on exceptions and introduction of evidence, the court ordered issuance of temporary injunction, whereby Terry was wholly prohibited from using his premises as a place for wrecking automobiles, or for storing and selling used parts; the restraint being suspended, however, by a permitted filing of supersedeas bond, pending appeal.

Appellant's points of appeal are, in effect, that the record establishes his above defenses as a matter of law, with resulting error in the adverse order under review; that aside from this, aforesaid temporary order, in disposing as it does of the entire controversy prior to a trial on the merits, is likewise erroneous.

The court sustained exceptions to all allegations of defendant claiming a nonconforming use and, we think, properly so; at least, no point has been made of such ruling here. The Dallas zoning ordinance became effective in September, 1929, at which time the fact is undisputed that previous owners of defendant's premises had used the same as a mattress factory; then as a plumbing shop, and from 1931 or '32, as an auto wrecking yard. Appellant purchased the property in 1937, continuing to use the iron building thereon and adjacent grounds for wrecking secondhand autos and sale of used parts. The premises, known as 1021 South Ewing, in the Oak Cliff section of Dallas, were in a "B–Area," or residential district, so designated by the original zoning ordinance; however, 80 feet to the south of Terry's 128-ft. lot, a small retail district is shown on plat exhibits, fronting on both sides of Ewing to a depth of some 200 feet.

Appellant's several appeals to the Board of Adjustment, after December, 1938, whereby he obtained temporary permits, have already been detailed in the opinion of Associate Justice Looney; to which may be added Terry's statement to the Board in his first appeal, viz.: "I bought the property for such use in good faith, as the former owner had operated such business thereon and informed me that I would be able to continue such business." From the successive orders of aforesaid Board, Terry did not prosecute a court appeal, and the instant suit was thereafter filed. Art. 1011g, Vernon's Ann.Civ.St., governs appeals from decisions of a board of adjustment, and under our construction thereof in Washington v. City of Dallas, Tex.Civ. App., 159 S.W.2d 579, the Board orders above mentioned have become matters of res adjudicata; and appellant's renewed claim of nonconforming use, being in the nature of a collateral attack thereon, cannot again be litigated.

Appellant's further defense involves constitutionality of the ordinance that restricts his lot to a residential use, and, in this connection, assumes the burden of showing that the particular classification is clearly unreasonable and arbitrary, without any substantial relation to the public health, safety, morals, or general welfare. Luse v. City of Dallas, Tex.Civ.App., 131 S.W.2d 1079, writ refused; City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169; Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, writ refused; City of Dallas v. Lively, Tex. Civ.App., 161 S.W.2d 895, writ refused. On this preliminary hearing we cannot presume a full development of facts from either side. However, appellee insists that the record without dispute establishes the area as de facto residential; the right to preliminary injunctive relief following as a matter of law; likewise precluding the possibility of any other and different judgment upon final trial, citing City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599. In view of all defensive testimony, but without comment on the weight thereof, we conclude that the instant record does not warrant application of the principle involved in Dallas v. McElroy.

Briefly stated, a survey of the territory reveals: Ewing Avenue continues across the G. C. & S. F. Ry. tracks southwardly through Oak Cliff, and is a paved, well-traveled highway. The block adjacent to the railroad (some 1,200 feet from Terry's lot) is "5–C" or first manufacturing, but beginning with Fifteenth Street, which intersects Ewing, the area under attack is "B–1," or residential on both sides of Ewing to Eighteenth Street and beyond, defendant's lot being some distance south of the Seventeenth Street intersection. A street view of the premises shows an iron building, with high board fence, a vacant lot to the left, while across is a vacant block from which a school building has been moved. While a number of residences occupy both sides of Ewing, several tourist cabins are shown north of appellant at Seventeenth Street, also a chicken hatchery some 750 feet farther down on the Eighteenth Street corner. Roy Eastus, defense witness, termed the vicinity a "blighted area," in which no new homes have been built within the last ten or fifteen years, his company refusing to loan money for such improvements. His testimony (relevant to the issue but ruled out) pronounced the lot as of no residential value and fit only for the use to which it was being put. In the Supreme Court-adopted opinion of City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d

1038, 1041, is stated: "While mere inconvenience and depreciation in value are not sufficient within themselves to constitute unreasonableness, yet it is settled that when depreciation in value is such as to make the property practically worthless for the designated use, this constitutes confiscation." Defendant's witnesses further testified that relative to his property, the ordinance in question bore no substantial relation to the health, safety, morals, or general welfare of the community; on the other hand, appellee offering no evidence of proper classification except such as must be inferred from existing conditions, i.e., the physical facts. Thus, in our opinion, the present record does not clearly negative the existence of an ultimate defensive issue, for disposition on final trial. An interlocutory injunction is a provisional and intermediate remedy, and ordinarily will not issue when its effect is to grant full and final relief; Sinclair Refining Co. v. City of Paris, Tex. Civ.App., 68 S.W.2d 230; 24 T.J., Sec. 132.

On above grounds, the writer concludes that the injunction heretofore granted should be dissolved and application therefor dismissed; and this concurrence in the original opinion of Associate Justice Looney is to that extent only.

BOND, Chief Justice (dissenting on rehearing).

I am in accord with the holdings in cases cited by Justice YOUNG and, in the main, his pronouncement of law applicable to the facts of this case, but I do not agree with the opinion of either of my Associates in reversing the judgment of the trial court and rendering judgment in favor of appellant, dissolving the injunction. The conclusion of my Associates, in effect, reverses the holdings of this Court in many cases of similar import involving the power and prerogative of the City authorities granted it by Acts of the Legislature, which have been sustained by our Supreme Court. They are cited in the YOUNG opinion. It will serve no useful purpose to relate the record in this appeal beyond that disclosed by Justices LOONEY and YOUNG. I content myself with the facts stated. It is my judgment that appellee's motion for rehearing should be granted, the judgment of the trial court affirmed, and, so believing, I respectfully dissent.