HOBSON, Justice.
This appeal is taken from a judgment of the circuit court denying a petition for writ of habeas corpus.
Appellant, petitioner below, is a locomotive engineer for the Atlantic Coast Line Railroad Company. He was charged with having violated an ordinance of the city of Orlando, designated Sec. 74.11 of the City of Orlando Code, 1948, as amended, by causing a locomotive and train to cross Kaley Avenue (a crossing not protected by a flagman, safety gates or electrically lighted signals) without causing the train to come to a full stop and be preceded by a flagman over the crossing. Appellant contended below, and still contends, that the ordinance is void.
The challenged ordinance, in substance, makes it the duty of each railroad company operating trains passing through the city of Orlando and crossing streets within a certain area, except for certain designated streets, to maintain a flagman at each such crossing or to provide, at each such crossing, safety gates or electrically lighted signals. If electrically lighted signals or gates are not installed, or are out of commission, trains are required to stop and to be preceded by a flagman across each crossing. A penalty is provided for railway employees and operators of trains violating the ordinance.
The trial judge found that the ordinance was not unreasonable as a matter of law and was within the police power of the municipality to enact and enforce. Appellant declined to offer any evidence on the issue of reasonableness, but contended that the ordinance is unreasonable on its face as a matter of law.
The heart of appellant’s contention is the proposition that the city has no authority to require a railroad to provide warning signals, although appellant admits that “no lack of authority in a city or town to itself provide these means of protection is believed to exist.” Conceding that the object *646 of the ordinance is to protect the safety of pedestrians and motorists at railroad crossings of the city streets, the appellant continues :
“Admittedly, this objective is one for the accomplishment of which the city may properly legislate under its police power to protect the public safety, but since this objective may as well be accomplished by the city itself providing flagmen, watchmen, safety gates or electrically lighted signals at railroad crossings at its own expense, it cannot be said that, by implication, the city is empowered to compel the railroad company to do so.”
The city, on the other hand, contends that we cannot reach the question sought to be presented by appellant because we are concerned only with the offense with which appellant was charged, which was failing to stop and be preceded by a flagman over an unprotected crossing. This offense is specified in Sec. 2 of the ordinance, which reads as follows:
“It shall be unlawful for any person in control as operator, engineer or driver of any locomotive, motor driven equipment, train, car or other equipment using the tracks and rails of any railroad company within or passing through the City, to cause the same to cross any of the street intersections required to be flagged or provided with the safety signals required by Section 1 hereof, or, if not so flagged or provided with safety signals, without causing the equipment in his control to come to a full stop before crossing said streets, avenues or drives and being preceded by a flagman thereover whose duty it shall be to caution and protect all persons using said crossing.”
As the city urges, this is the only part of the ordinance which applies to appellant. It is not conéerned with safety devices, whoever provides them, but only with the conduct of the engineer of a train in proceeding over a crossing which has not been provided with warning devices. The only question raised on this appeal, therefore, is whether or not the city of Orlando was acting within the scope of its authority in making it unlawful for the engineer to cross specified intersections under stated conditions without first causing the train to stop and be preceded across the intersection by a flagman.
In Seaboard Air Line Railway v. Smith, 53 Fla. 375, 43 So. 235, we said that a municipality, even independent of a specific charter provision on the subject, had the power to pass and enforce an ordinance limiting the speed of a train within the corporate limits. In support of this proposition we cited Evison v. Chicago, St. Paul, Minneapolis & Omaha R. Co., 45 Minn. 370, 48 N.W. 6, 11 L.R.A. 434. If a municipality, under its general powers, may prescribe by ordinance that speed must be reduced, it may, by the same token, require that the train be brought to a stop, and we are in accord with the line of authority in favor of this proposition, although we recognize that there is authority to the contrary. See 44 Am.Jur., Railroads, Sec. 396, pp. 607, 608 and cases cited.
The principal control upon the power of a municipality to regulate the passage of trains within its limits is that the requirements of ordinances which it enacts for this purpose must be reasonable. See 7 McQuillan, Municipal Corporations, 3rd ed., Sections 24.721, 24.725, 24.-729, and cases cited. The ordinance before us is not unreasonable on its face, and appellant has not shown that it is unreasonable in its effect.
No error having been shown, the judgment appealed from must be, and it is hereby, affirmed.
TERRELL, C. J., and DREW and O’CONNELL, JJ., concur.