148    SUPREME COURT OF WISCONSIN.    [Dec.

State ex rel. Carter v. Harper, 182 Wis. 148

STATE EX REL. CARTER, Appellant, vs. HARPER, Inspector of Buildings, Respondent.

*October 19—December 11, 1923.*

*Constitutional law: Municipal corporations: Zoning ordinances: Due process of law: Police power: Discretion of legislature: Incidental damage to property: Compensation: Reasonableness of ordinance: Prohibiting enlargement of existing business building in restricted area: Class legislation.*

1. Sec. 13, art. I, Const. Wis., and amendm. XIV, Const. U. S., which provide respectively that the property of no person shall be taken for public use without just compensation, and that no person shall be deprived of his property without due process of law, interpose no barrier to the exercise of the police power of the state.  p. 151.

2. Whether a given situation presents a legitimate field for the exercise of the police power placing restraints upon the use of property or upon personal conduct depends upon whether the situation presents a reasonable necessity for the imposition of restraint in order to promote the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished.  p. 152.

3. The legislature may not, in the exercise of its police power, pass a law expressly prohibited by the constitution; and laws imposing restraints interfering with the use of property or personal liberty, in the absence of some public necessity therefor, cannot be sustained.  p. 152.

4. The rights preserved to the individual by sec. 13, art. I, of the state constitution and amendm. XIV of the federal constitution are held in subordination to the rights of society, and these constitutional limitations were not intended to so far protect the individual in the use of his property as to enable him to use it to the detriment of society.  p. 153.

5. If in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made; but incidental damages to private property resulting from governmental activities, or laws passed in the promotion of the public welfare, are not considered a taking of the property for which compensation must be made.  p. 153.

6. The same restrictions which the government in the exercise of its police power may impose upon the use of property in the interest of the public health, morals, and safety may be imposed in promotion of the public welfare, convenience, and general prosperity.  p. 154.

State ex rel. Carter v. Harper, 182 Wis. 148.

7. It is reasonable to attempt to preserve various sections of a city from intrusions on the part of institutions that are offensive to and out of harmony with the use to which such sections are devoted, and under present standards of society these unbecoming intrusions constitute such a recognized interference with the rights of residents as to justify regulation. p. 158.

8. There are benefits to be derived by cities adopting zoning regulations, the attainment of which affords a legitimate exercise of the police power; and the results which such regulations tend to accomplish being material rather than æsthetic in their nature, it is unnecessary to consider how far æsthetic considerations furnish a justification for the exercise of the police power. p. 158.

9. Due process of law, under amendm. XIV, Const. U. S., includes compensation for property taken. p. 161.

10. Where a given situation is conceded to present a proper field for the exercise of the police power, the extent of the interference with the rights of the individual is a matter which lies very greatly in legislative discretion; but the reasonableness of the regulation, as well as its main purpose, is subject to judicial review. p. 161.

11. The zoning ordinance of the city of Milwaukee adopted pursuant to authority conferred by sec. 62.23, Stats. 1921, is a valid exercise of the police power, and is not unreasonable in that it prohibits the enlarging of an existing business building in a residence district. p. 161.

12. Nor does such zoning ordinance amount to class legislation by reason of sec. 26.46 thereof, which provides that a structure or premises may be erected or used in any location by a public-service corporation for any purpose which the railroad commission decides is reasonably necessary for the public convenience or welfare. p. 162.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

*Mandamus* to compel the issuance of a building permit. The relator is in the wholesale and retail milk and dairy products business in the city of Milwaukee. In September, 1919, he purchased a lot and erected thereon a building which he is using as a dairy and milk pasteurizing plant. During the summer of 1921 he found that his business had outgrown the capacity of his plant to such an extent that it became impossible for him to conduct his business in

said building in accordance with city and state health regulations. He made application to the inspector of buildings of the city of Milwaukee for a permit to erect an addition to the present building. The application was denied for the reason that the proposed addition to the building was in violation of the terms of the so-called zoning ordinance of the city of Milwaukee, adopted pursuant to authority conferred by sec. 62.23, Stats.

An alternative writ of *mandamus* issued out of the circuit court for Milwaukee county in the usual form, addressed to the inspector of buildings of the city of Milwaukee, to compel the issuance of said permit. The respondent made return setting forth the so-called zoning ordinance, to which return the relator demurred. The demurrer was overruled, and judgment ordered quashing the alternative writ and dismissing the petition. From the judgment thus entered this appeal is taken.

For the appellant there was a brief by *Gugel & Greenthal* of Milwaukee, and oral argument by *Frank H. Gugel.*

For the respondent there was a brief by *John M. Niven*, city attorney of the city of Milwaukee, and *Chas. W. Babcock*, assistant city attorney, and oral argument by *Mr. Babcock*.

OWEN, J. The so-called zoning ordinance of the city of Milwaukee establishes within said city four classes of use districts designated: residence districts, local business districts, commercial and light manufacturing districts, and industrial districts. Relator's property is within a residence district. The ordinance then prescribes the uses to which property within the districts so created may be devoted. The present use of relator's property does not conform to the use permitted by the ordinance in residence districts. The ordinance further provides that no building within a residence district devoted to a nonconforming use shall be enlarged unless the use is changed to a conforming use.

State ex rel. Carter v. Harper, 182 Wis. 148.

This is a brief statement of the· provisions of the ordinance upon which the building inspector relies as a justification for the denial of the permit. That the terms of the ordinance do furnish such justification, if the ordinance is· a valid regulation, is not denied by the appellant. He claims, however, that the ordinance is unreasonable and oppressive, that it deprives him of the equal protection of the laws, and takes his property without due process of law and without just compensation.

. The constitution of this state, sec. 13, art. I, provides that the property of no person shall be taken for public use without just compensation therefor, and the Fourteenth amendment of the federal constitution provides that no person shall be deprived of his property without due process of law. These provisions are intended to secure the enjoyment of most substantial and fundamental rights, and the allegation that one is being deprived of his property without just compensation or without due process of law calls for most serious consideration. It has long been settled, however, that these constitutional provisions interpose no barrier to the exercise of the police power of the state. Thus it was said in *State ex rel. Kellogg v. Currens,* 111 Wis. 431 (87 N. W. 561), at page 435, speaking of constitutional limitations upon legislative power:

"These limitations, however, according to all the authorities, state and federal, are to be read as not extending so far as to deprive the states of their power to so control the conduct of individuals as to protect the welfare of the community—a power commonly described as the 'police power.' "

Many declarations appear in our Reports, coming from the pen of Mr. Justice MARSHALL, tending to create the impression that there are constitutional limitations upon the exercise of this power. *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885; *Mehlos v.*

*Milwaukee,* 156 Wis. 591, 146 N. W. 882. A careful reading of these cases, however, will indicate that the constitutional limitations which were there in the mind of the court were either some express constitutional provision prohibiting certain specified legislation, or the line of reasonableness beyond which the legislature could not go. Those cases establish the principle that whether a given situation presents a legitimate field for the exercise of the police power placing restraints upon the use of property or upon personal conduct, depends upon whether the situation presents a reasonable necessity for the imposition of restraint in order to promote the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished. It goes without saying that the legislature may not, in the exercise of its police power, pass a law expressly prohibited by the constitution. It is also accepted doctrine, we think, everywhere that laws imposing restraints interfering with the use of property or personal liberty, in the absence of some public necessity therefor, cannot be sustained. The cases cited emphasize the judicial duty and function to determine whether a given exertion of the police power is a reasonable exercise thereof.

"There must be some reasonable basis for legislative activity in respect to the matter dealt with, else the subject is outside the scope of legislative interference. However, given a subject in respect to which there is some reasonable necessity for regulation, fair doubt in respect thereto being resolved in favor of the affirmative, in case of the legislature having so determined, the degree of exigency is a matter wholly for its cognizance. What is said as regards legitimacy of subjects for exercise of the police power may be repeated as to appropriateness of means; while given the two elements,—legitimacy of subject and appropriateness of means,—the degree of interference within the boundaries of reason is for the legislature to decide, there being left in the end the judicial power to determine whether the interference goes so far as to violate some guaranteed right,—

regulate it so severely as to materially impair it, reasonable doubts being resolved in favor of legislative discretion." *Mehlos v. Milwaukee,* 156 Wis. 591, 600, 601, 146 N. W. 882.

It is thoroughly established in this country that the rights preserved to the individual by these constitutional provisions are held in subordination to the rights of society. Although one owns property he may not do with it as he pleases, any more than he may act in accordance with his personal desires. As the interest of society justifies restraints upon individual conduct, so also does it justify restraints upon the use to which property may be devoted. It was not intended by these constitutional provisions to so far protect the individual in the use of his property as to enable him to use it to the detriment of society. By thus protecting individual rights, society did not part with the power to protect itself or to promote its general well-being. Where the interest of the individual conflicts with the interest of society, such individual interest is subordinated to the general welfare. If in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made. But incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made. This has been stated over and over again, but probably as lucid a discussion of the principle will be found in *Chicago, B. & Q. R. Co. v. Drainage Comm'rs,* 200 U. S. 561, 26 Sup. Ct. 341, as anywhere, where it is held, in the language of the syllabus:

"Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not taking property without due compensation, and the constitutional prohibition against the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the

tranquillity of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments."

In that case it was held that the construction of a new and larger bridge by the railroad company over a stream, made necessary by the increased flow of the stream resulting from the drainage of submerged lands (a governmental project), did not constitute a taking of property without just compensation or due process of law. Many cases are therein cited where the prosecution of governmental projects resulted in incidental damages to private property, which were held not to be compensable claims against the government, because the result of the improvements did not constitute a taking of property although they seriously interfered with the use of the property.

Except in cases of nuisance there is a reciprocity of benefits resulting from limitations imposed upon the use of property by general laws. He who is limited in the use of his property finds compensation therefor in the benefits accruing to him from the like limitations imposed upon his neighbor. This principle was pointed out in *Piper v. Ekern,* 180 Wis. 586, 194 N. W. 159, and furnishes the distinction between the fate of sec. 4444*g,* Stats. 1921, there condemned, and sec. 4444*f,* Stats. 1923, which was held a constitutional enactment in the *Building Height Cases,* 181 Wis. 519, 195 N. W. 544, decided October 16, 1923. In the former case it was held that the statute was enacted purely for the protection of the state capitol, and that, as the state could not take private property to be used as a site for its capitol, no more could it limit the use of property for the protection of the capitol. The latter statute, however, was general in its operation throughout the state and was not limited to the special and selfish purpose which characterized the former. All those whose property is affected by the latter statute are compensated by the restrictions placed upon their neighbors.

In this day none will dispute that government in the exer-

cise of its police power may impose restrictions upon the use of property in the interest of public health, morals, and safety. That the same restrictions may be imposed upon the use of property in promotion of the public welfare, convenience, and general prosperity is perhaps not so well understood, but, nevertheless, is firmly established by the decisions of this and the federal supreme court. Thus in *Chicago, B. & Q. R. Co. v. Drainage Comm'rs, supra,* at page 592 it is said:

"We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety. . . . Private property cannot be taken without compensation for public use under a police regulation relating strictly to the public health, the public morals, or the public safety, any more than under a police regulation having no relation to such matters, but only to the general welfare."

This principle was approvingly quoted in *Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289, where it was said:

"It [the police power] extends to so dealing with the conditions which exist in the state as to bring out of them the greatest welfare of its people."

In *Noble State Bank v. Haskell,* 219 U. S. 104, 111, 31 Sup. Ct. 299, it is said:

"It may be said in a general way that the police power extends to all the great public needs. *Camfield v. U. S.* 167 U. S. 518, 17 Sup. Ct. 864. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

In *Munn v. Illinois,* 94 U. S. 113, at p. 124, it is said:

"When one becomes a member of society he necessarily parts with some rights or privileges which, as an individual not affected by his relations to others, he might retain. 'A body politic,' as aptly defined in the preamble of the constitution of Massachusetts, 'is a social compact by which the

whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good.' This does not confer power upon the whole people to control rights which are purely and exclusively private (*Thorpe v. R. & B. R. Co.* 27 Vt. 143) ; but it does authorize the establishment of laws requiring each citizen to so conduct himself, and so use his own property, as not unnecessarily to injure another. This is the very essence of government, and has found expression in the maxim *sic utere tuo ut alienum non lædas.* From this source come the police powers, which, as was said by Mr. Chief Justice TANEY in the *License Cases,* 5 How. 583, 'are nothing more or less than the powers of government inherent in every sovereignty, . . . that is to say . . . the power to govern men and things.' Under these powers the government regulates the conduct of its citizens one towards another, and the manner in which each shall use his own property, *when such regulation becomes necessary for the public good."*

Speaking of the police power in *State ex rel. Adams v. Burdge,* 95 Wis. 390 (70 N. W. 347), at page 398 this court said: "It is that inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort and welfare of society." In the *Trading Stamp Cases,* 166 Wis. 613 (166 N. W. 54), at page 625 it is said: "The law on the subject as embodied in the decided cases shows that the police power is held to include all those regulations which promote the general interest and prosperity of the public generally."

The legislation authorizing so-called zoning ordinances is of comparatively recent origin, and it is not unnatural that those adversely affected should regard them as an unjust and unwarranted interference with their property rights. The question of whether such ordinances fall legitimately within the realm of the police power has been considered by a few courts, presently to be noted, with conflicting results. The pioneer nature of the legislation requires that it have careful consideration, tested by the fundamental principles to

which we have alluded. We are required to consider whether such ordinances have any reasonable tendency to promote the public morals, health, or safety or the public comfort, welfare, or prosperity.

The purpose of the law is to bring about an orderly development of our cities; to establish residence districts into which business, commercial, and industrial establishments shall not intrude; and to fix business districts and light industrial districts upon which heavy industrial concerns may not encroach. This is no new idea, although it has but recently taken the form of legislation. Every one who has observed the haphazard development of cities, the deterioration in the desirability of certain residential sections by the encroachment of business and industrial establishments upon and into such sections, resulting in the consequent destruction of property values and in the ultimate abandonment of such sections for residential purposes, has appreciated the desirability of regulating the growth and development of our urban communities. The home-seeker shuns a section of a city devoted to industrialism and seeks a home at some distance from the business center. A common and natural instinct directs him to a section far removed from the commerce, trade, and industry of the community. He does this because the home instinct craves fresh air, sunshine, and well-kept lawns—home association beyond the noise of commercial marts and the dirt and smoke of industrial plants. Fresh air and sunshine adds to the happiness of the home and has a direct effect upon the well-being of the occupants. It is not uncommon to witness efforts of promoters to preserve the residential character of their additions by placing covenants in their deeds restricting the use of the property to residential purposes and, in some instances, requiring the erection of a home according to specified standards. It cannot be denied that a city systematically developed offers greater attractiveness to the home-seeker than a city that is developed in a haphazard way.

The one compares to the other about as a well-ordered department store compares to a junk-shop. If such regulations stabilize the value of property, promote the permanency of desirable home surroundings, and if they add to the happiness and comfort of the citizens, they thereby promote the general welfare.

. When we reflect that one has always been required to so use his property as not to injure his neighbors, and that restrictions against the use of property in urban communities have increased with changing social standards, and that the luxuries of one decade become the necessities of another, can it be said that an effort to preserve various sections of a city from intrusion on the part of institutions that are offensive to and out of harmony with the use to which such sections are devoted is unreasonable? The present standards of society prompt a revolt against such unbecoming intrusions, and they constitute such a recognized interference with the rights of the residents of such sections as to justify regulation.

The benefits to be derived by cities adopting such regulations may be summarized as follows: they attract a desirable and assure a permanent citizenship; they foster pride in and attachment to the city; they promote happiness and contentment; they stabilize the use and value of property and promote the peace, tranquillity, and good order of the city. We do not hesitate to say that the attainment of these objects affords a legitimate field for the exercise of the police power. He who owns property in such a district is not deprived of its use by such regulations. He may use it for the purposes to which the section in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden.

It is sometimes said that these regulations rest solely upon æsthetic considerations. The results which they tend

State ex rel. Carter v. Harper, 182 Wis. 148.

to accomplish, as above summarized, are material rather than æsthetic in their nature. It is not necessary for us to consider how far æsthetic considerations furnish a justification for the exercise of the police power. But one case has been called to our attention which holds that æsthetic considerations alone justify the exertion of that power. *Ware v. Wichita,* 113 Kan. 153, 214 Pac. 99. Perhaps the case of *State ex rel. Twin City B. & I. Co. v. Houghton,* 144 Minn. 1, 13, 174 N. W. 885, 176 N. W. 159, goes nearly if not quite as far. Other cases hold that æsthetic reasons may be taken into consideration but that they cannot furnish the substantial basis for the exercise of the power. *Welch v. Swasey,* 193 Mass. 364, 79 N. E. 745; *S. C.* 214 U. S. 91, 29 Sup. Ct. 567; *Opinion of the Justices,* 234 Mass. 597, 127 N. E. 525; *St. Louis Poster Adv. Co. v. St. Louis,* 249 U. S. 269, 39 Sup. Ct. 274.

It seems to us that æsthetic considerations are relative in their nature. With the passing of time, social standards conform to new ideals. As a race, our sensibilities are becoming more refined, and that which formerly did not offend cannot now be endured. That which the common law did not condemn as a nuisance is now frequently outlawed as such by the written law. This is not because the subject outlawed is of a different nature, but because our sensibilities have become more refined and our ideals more exacting. Nauseous smells have always come under the ban of the law, but ugly sights and discordant surroundings may be just as distressing to keener sensibilities. The rights of property should not be sacrificed to the pleasure of an ultra-æsthetic taste. But whether they should be permitted to plague the average or dominant human sensibilities, well may be pondered.

Our attention has been called to but one case in which an ordinance of this character, enacted pursuant to legislative authority, has been held invalid. *State ex rel. Lachtman v. Houghton,* 134 Minn. 226, 158 N. W. 1017. The decis-

ion in that case gave great weight to authorities holding invalid ordinances in which a limited portion of the city was sought to be preserved as purely residential districts, in some of which the power of the council in such respect depended upon a petition or an expressed wish of the people. Manifestly there is a plain distinction between such efforts and a broad, comprehensive plan involving the entire city and affecting all residents therein alike in an effort not to promote the desires of a majority of the people of a given district but to promote the welfare of the city as a whole. It seems that this distinction, which we regard as substantial and fundamental, was not regarded as important by the Minnesota court.   In a later decision, however (*State ex rel. Twin City B. & I. Co. v. Houghton,* 144 Minn. 1, 174 N. W. 885, 176 N. W. 159), in the opinion on rehearing the court seems to have taken a different view of such legislation, and it seems doubtful whether the court, as then constituted, would have sanctioned the conclusion reached in the former case.

While an ordinance involving a comprehensive plan of city development was not presented in *Spann v. Dallas,* 111 Tex. 350, 235 S. W. 513, it must be conceded that the reasoning of the court in that case would necessitate condemnation of such an ordinance.   However, we think the court took a rather too narrow view of the scope of the police power to lend great weight to the conclusion reached.

Ordinances such as the one here under consideration have met with the approval of the courts of New York, Massachusetts, and Kansas.   *Lincoln Trust Co. v. Williams Bldg. Corp.* 229 N. Y. 313, 317, 128 N. E. 209; *Opinion of the Justices,* 234 Mass. 597, 127 N. E. 525; *Ware v. Wichita,* 113 Kan. 153, 214 Pac. 99.   Those courts held such ordinances valid.

It is claimed that the authority of the Massachusetts case is greatly minimized because the constitution of that state specifically authorized such legislation.   It is to be remarked,

State ex rel. Carter v. Harper, 182 Wis. 148.

however, that the validity of the proposed ordinance was tested with reference to the provisions of the Fourteenth amendment of the federal constitution. While that clause of the constitution does not specifically provide that private property shall not be taken for public use without just compensation, it does provide that no person shall be deprived of his property without due process of law. Due process of law includes compensation for property taken. *Chicago, B. & Q. R. Co. v. Drainage Comm'rs,* 200 U. S. 561, 26 Sup. Ct. 341. As the constitution of a state can no more conflict with the federal constitution than can a statute, it is apparent that the Massachusetts court surmounted every objection here interposed.

In *Des Moines v. Manhattan Oil Co.* 193 Iowa, 1096, 184 N. W. 823, the court considered the efficiency of the police power to establish restricted districts in cities. The ordinance there under consideration was held valid, and the opinion of the court makes it clear that ordinances such as this would meet with the approval of that court.

It therefore appears that the great weight of authority sustains the validity of this class of ordinances when enacted pursuant to legislative authority.

There remains a further question to be considered. Appellant claims that the ordinance is unreasonable in that it prohibits him from enlarging the business to which his property was devoted prior to the passage of the ordinance. The reasonableness of this feature of the ordinance, as well as its main purpose, is subject to judicial review. Where, however, a given situation is conceded to present a proper field for the exercise of the police power, the extent of the interference is a matter which lies very greatly in legislative discretion. *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882. If the appellant has acquired a vested right to enlarge his business, then every other person having an embryo business in a residential section must be accorded the same privilege, and an infant industry may grow to mam-

moth proportions, thereby to a very large extent defeating the purposes of the regulation.

In *Hadacheck v. Los Angeles,* 239 U. S. 394, 36 Sup. Ct. 143, a brick yard of the value of $800,000, situated far outside the city limits when acquired, was suppressed after it had been included in the city limits. If property of that nature and of that value must yield to the supremacy of the police power, it is difficult to see how a regulation prohibiting appellant's enlargement of his business can be held unreasonable. Then, too, it may be remarked that an ordinance permitting those already engaged in business to enlarge the same while prohibiting all others from engaging therein, would not tend to make the ordinance less vulnerable. See *People ex rel. Roos v. Kaul,* 302 Ill. 317, 134 N. E. 740, and cases there cited.

It is further contended that the ordinance amounts to class legislation by reason of the provisions of sec. 26.46, Milwaukee Code, 1921 Supp., which provides that "A structure or premises may be erected or used in any location by a public-service corporation for any purpose which the railroad commission decides is reasonably necessary for the public convenience or welfare." When it is remembered that such buildings are erected to promote the comfort and convenience of the public and that it is within the power of the state to compel such erection, it would appear that this constitutes a reasonable and valid classification. It must be apparent that an ordinance enacted pursuant to state authority which prevents the erection of buildings or the conduct of business deemed inimical to public interest need not also prohibit the erection of buildings or the conduct of business which is essential to the comfort and convenience of the public and which the duly constituted authority of the state determines to be necessary for the public service which a public utility is required to render. A similar provision received the consideration of the court in *Opinion of the Justices,* 234 Mass. 597, 127 N. E. 525, concerning which it

was said (p. 606) that the provision "is within settled principles touching legislative control over property devoted to that use."

It is our conclusion that the ordinance is, in the respects here considered, a reasonable, valid, and constitutional enactment. It is appreciated that there are other provisions of the ordinance the validity of which may be the subject of future challenge. It is to be understood that no opinion is expressed with reference to any features of the ordinance except such as are herein treated. So far as the ordinance affects the rights of appellant, it fully authorizes the denial of a building permit the issuance of which he seeks to coerce.

*By the Court.*—Judgment affirmed.